IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FAIRFAX COUNTY SCHOOL BOARD, <br><br> Plaintiff, <br><br> v. <br><br> LINDA MCMAHON, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-1432 (RDA/LRV) |
| ARLINGTON SCHOOL BOARD, <br><br> Plaintiff, <br><br> v. <br><br> LINDA MCMAHON, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-1434 (RDA/LRV) |

**<u>ORDER</u>**

This matter comes before the Court in the above-captioned actions on Plaintiff Fairfax County School Board's Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order, Civil Action No. 1:25-cv-1432 ("*FCSB*"), Dkt. 2, Plaintiff Arlington School Board's Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order, Civil Action No. 1:25-cv-1434 ("*ASB*"), Dkt. 2, (collectively, the "Motions"), and the respective Complaints, *FCSB*, Dkt. 1; *ASB*, Dkt. 1.[1] Considering the Complaints, the Motions, Plaintiffs' Memoranda in Support, *FCSB*,

---

[1] In the Complaints, Plaintiffs noted the similar nature of the above-captioned actions and Motions and requested that the actions be consolidated. *FCSB*, Dkt. 1 at 1 n.2; *ASB*, Dkt. 1 at 1 n.2. Defendants have consented to this consolidation. Accordingly, for good cause shown and by the express agreement of the parties to the litigation, the Court exercises its discretion pursuant to Federal Rule of Civil Procedure 42(a)(2) to consolidate these actions and will address the Motions together.

Dkt. 3; *ASB*, Dkt. 3, Plaintiffs' Declarations, *FCSB*, Dkt. 16; *ASB*, Dkt. 17, Defendants'[2] Oppositions, *FCSB*, Dkt. 19; *ASB*, Dkt. 19, the parties' arguments at the hearing held by the Court on September 3, 2025, Defendants' Notices Regarding Factual Background, *FCSB*, Dkt. 26; *ASB*, Dkt. 25, and Plaintiffs' Replies, *FCSB*, Dkt. 27; *ASB*, Dkt. 26, the Court DENIES Plaintiffs' Motions and DISMISSES the Complaints for lack of subject matter jurisdiction because, pursuant to the Tucker Act, jurisdiction appropriately lies with the Court of Federal Claims for the reasons that follow.

## I. BACKGROUND

This case arises out of Defendant United States Department of Education's (the "Department") August 19, 2025 placement of Fairfax County Public Schools ("FCPS") and Arlington Public Schools ("APS") "on high-risk status[] with the result that all Department funds . . . will be done by reimbursement only." *FCSB*, Dkt. 1 ¶ 1; *ASB*, Dkt. 1 ¶ 1. According to Plaintiffs, to support this "high-risk status," "Defendants assert that [FCPS and APS] violate[] Title IX by maintaining a policy that permits students to access restrooms and locker rooms . . . that align with their gender identity." *FCSB*, Dkt. 1 ¶ 2; *ASB*, Dkt. 1 ¶ 2.

On Friday, August 29, 2025, Plaintiffs, who operate, maintain, and supervise FCPS and APS, filed suit in this Court, alleging six claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A)-(B), and the Declaratory Judgment Act, 28 U.S.C. § 2201. *FCSB*, Dkt. 1; *ASB*, Dkt. 1. At the same time, Plaintiffs also filed Emergency Motions for Preliminary Injunctions and/or Temporary Restraining Orders. *FCSB*, Dkt. 2; *ASB*, Dkt. 2. Both cases were assigned to this judge at approximately 4:30 p.m. on Friday, August 29, 2025, and the Court, despite the intervening national Labor Day Holiday, promptly set a hearing on the Motions for the following Wednesday, September 3, at 9:00 a.m. given the emergency nature of the Motions.

---

[2] Defendants are Linda McMahon, in her official capacity as Secretary of Education of the United States, and the United States Department of Education.

On Tuesday, September 2, at approximately 4:30 p.m., Defendants filed Notices indicating that, due to the Labor Day weekend, necessary federal personnel were unavailable and that Oppositions to the Motions would be forthcoming. *FCSB*, Dkt. 15; *ASB*, Dkt. 16. That same day, Plaintiffs filed Declarations in support of the Motions. *FCSB*, Dkt. 16; *ASB*, Dkt. 17. At approximately 11:30 p.m. on the same day, Defendants filed their Oppositions. *FCSB*, Dkt. 19; *ASB*, Dkt. 19.

On Wednesday, September 3, at 9:00 a.m., the Court held the hearing on the Motions, the parties presented argument, and the Court took the matter under advisement. *FCSB*, Dkt. 22; *ASB*, Dkt. 21. Later that day, at approximately 5:00 p.m., Defendants filed a Notice to correct a factual inaccuracy asserted in their Oppositions and at the hearing.[3] *FCSB*, Dkt. 26; *ASB*, Dkt. 25.

On Thursday, September 4, at approximately 12:00 p.m., Plaintiffs filed Replies in support of their Motions. *FCSB*, Dkt. 27; *ASB*, Dkt. 26.

## II. LEGAL STANDARD

In their Motions, Plaintiffs seek preliminary injunctions or temporary restraining orders—each "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such a request "involv[es] the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017). To be eligible for a preliminary injunction or temporary restraining order, Plaintiffs must demonstrate each of the following factors by a "clear showing": (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief; and (4) the public interest favors equitable relief. *Winter*, 555 U.S. at 20, 22. As particularly relevant to the Court's analysis here, the requirement for showing a clear likelihood of success on the merits "is far stricter than a requirement

---

[3] During the hearing, Defendants had asserted that Plaintiffs had failed to file a request for reconsideration. After the hearing, Defendants reported that they discovered that Plaintiffs' request for the Department's reconsideration had been "caught by a spam filter." *FCSB*, Dkt. 26 at 1; *ASB*, Dkt. 25 at 1.

that the [moving party] demonstrate only a grave or serious question for litigation." *Sarsour*, 245 F. Supp. 3d at 729 (cleaned up). Fundamentally, as is the case with any action filed in a federal district court, a federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (internal citation omitted).

## III. ANALYSIS

The parties' briefing and oral argument raised a number of legal issues. In their Motions, Plaintiffs address the merits of their requests for injunctive relief and rely primarily on the Fourth Circuit's precedent in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). This Court unconditionally recognizes that *Grimm* "remains the law of this Circuit" and thus binds both this Court and parties within the Fourth Circuit. *Doe v. South Carolina*, 2025 WL 2375386, at *8 (4th Cir. Aug. 15, 2025). In their Oppositions, however, Defendants raise the threshold question of this Court's subject matter jurisdiction. Under controlling Supreme Court and Fourth Circuit precedent, this Court lacks subject matter jurisdiction. Thus, this Court "may not rule on the merits" of the questions raised by Plaintiffs. *Sinochem Int'l*, 549 U.S. at 430.

### A.    Whether the Court Has Jurisdiction to Provide the Relief Requested in the Motions

Earlier this year, in *Department of Education v. California*, the Supreme Court of the United States granted a stay of a federal district court order[4] which had (1) enjoined the Department from terminating various education-related grants and (2) required the Department to pay out past-due grant obligations and continue paying obligations as they accrued. 145 S. Ct. 966, 968 (2025). In so doing, the Supreme Court held that the Department was likely to succeed in showing that the district court "lacked jurisdiction to order the payment of money under the APA" because "[t]he APA's waiver of sovereign immunity does not apply 'if any other statute that grants consent to suit expressly or

---

[4] The order was styled as a temporary restraining order; however, the Court construed the order as an appealable preliminary injunction. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025).

impliedly forbids the relief which is sought.'" *Id.* (quoting 5 U.S.C. § 702). While the Supreme Court recognized that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds," *id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)), "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the district court ordered." *Id.* Rather, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* (quoting 28 U.S.C. § 1491(a)(1)).

Despite the recency of the *California* decision, the Fourth Circuit has already applied *California* in other cases. In *Sustainability Institute v. Trump*, the Fourth Circuit granted a stay of a district court order requiring the Government "to restore [the plaintiffs'] access to grant funds immediately" and prohibiting the Government from "freezing, terminating or otherwise interfering with the funding of [the grants] . . . without written authorization from the Court." 2025 WL 1587100, at *1 (4th Cir. June 5, 2025) (quoting *Sustainability Inst. v. Trump*, 2025 WL 1486979, at *4, *10 (D.S.C. May 20, 2025)). Following the Supreme Court's specific direction in *California*, the Fourth Circuit held that the Government was likely to succeed in showing that the district court lacked subject matter jurisdiction over the plaintiffs' claims. *Id.* The Fourth Circuit noted that, "like the grants in *California*, the grants [in *Sustainability*] were awarded by federal executive agencies to specific grantees from a generalized fund . . . and it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds." *Id.* at *2. While the district court had relied on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), in exercising jurisdiction, the Fourth Circuit rejected this approach, noting that "the Supreme Court distinguished *Bowen* in *California*, highlighting the meaningful difference between the relief in that case and an order 'to enforce a contractual obligation to pay money' along the lines of what the district court entered." *Id.* And the Fourth Circuit held that it was "unlikely that [the plaintiffs'] ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended [the plaintiffs'] grants, would provide a detour around

5

the Tucker Act." *Id.* (citing *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327-28 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to . . . implied statutory limitations," and "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001))); *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43-44 (1991); *Widakuswara v. Lake*, 2025 WL 1288817, at *5 (D.C. Cir. May 3, 2025) (staying injunction in a similar case raising APA claims and "mandamus, impoundment, Presentment Clause, Appropriations Clause, Spending Clause, Take Care Clause, Separation-of-Powers, and *ultra vires* claims")).[5]

Just two weeks ago, on August 21, 2025, in *National Institutes of Health v. American Public Health Association*, the Supreme Court stayed a district court's order vacating the Government's termination of various research grants pursuant to *California* but denied the application for a stay as to the district court's order vacating various related internal guidance documents describing the National Institutes of Health's ("NIH") new priorities as arbitrary and capricious and unlawful in violation of the APA. 2025 WL 2415669, *1 (U.S. August 21, 2025). The Supreme Court divided 4-1-4, and Justice Amy Coney Barrett provided the critical, and what may ultimately be the decisive, analytical perspective for assisting lower courts in their efforts to navigate an ever-evolving federal jurisprudence. *Id.* In her concurrence, Justice Barrett emphasized that, in the case before the Supreme Court, both the district court and court of appeals had treated NIH's termination of grants and its issuance of guidance as distinct agency actions. *Id.* at *2 (Barrett, J., concurring). Relying on this fact, Justice Barrett found that just because "the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the CFC can hear." *Id.*

---

[5] The Fourth Circuit has also cited *California* as support for staying other district court injunctions. *See Maryland v. U.S. Dep't of Agric.*, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025); *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025) (staying injunction related to the Department's termination of grants awarded for teachers).

at *2. Justice Barrett also emphasized the lack of a causal connection between the two actions, noting that vacating the agency guidance did not reinstate the terminated grants. *Id.*; *see also id.* at *3 (noting that she was "not sure" that the challenges to the guidance and the grant terminations arise from substantially the same operative facts).

Turning to the instant case, in their Motions, Plaintiffs request that this Court "preliminarily enjoin and/or temporarily restrain Defendants, including their officers, employees, agents, attorneys, and any person working in concert or participation with any Defendant or under any Defendant's supervision, direction or control, from designating [FCPS/APS] as 'high-risk' and requiring that [FCPS/APS] receive federal funds by reimbursement." *FCSB*, Dkt. 2 at 1-2; *ASB*, Dkt. 2 at 1-2. Because the relief that Plaintiffs seek ultimately requires this Court "to order the payment of money," this Court lacks subject matter jurisdiction under controlling Supreme Court and Fourth Circuit precedent as discussed *supra*. *See California*, 145 S. Ct. at 968 (holding a district court likely lacked jurisdiction to enjoin the Department from terminating grants); *Sustainability*, 2025 WL 1587100, at *1 (holding a district court likely lacked jurisdiction to require the Government to restore access to grant funds immediately and prohibit the Government from freezing, terminating, or otherwise interfering with the funding of the grants without court authorization); *NIH*, 2025 WL 2415669, *1 (holding a district court likely lacked jurisdiction to vacate the Government's termination of grants).

Because this Court is bound by controlling authority, Plaintiffs' arguments to the contrary are unavailing. As a preliminary matter, Plaintiffs focus on the argument that they did not explicitly request "money damages," and thus cannot be subject to the Tucker Act. This argument cannot endure as it is not only contrary to the Supreme Court's recent decisions in *California* and *NIH* and the Fourth Circuit's admonition in *Sustainability* but also is contrary to an established line of authority from the Fourth Circuit and other courts holding that plaintiffs may not artfully plead around Tucker Act jurisdiction. *See Kidwell v. Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995) ("This is because plaintiffs can bypass Tucker Act jurisdiction by converting complaints which

7

'at their essence' seek money damages from the government into complaints requesting injunctive relief or declaratory actions. Because this forum shopping circumvents a primary purpose of the Act—to ensure that a central body adjudicates most claims against the United States Treasury, we have stated that 'jurisdiction under the Tucker Act cannot be avoided by disguising a money claim as a claim requesting a form of equitable relief.'" (internal citations omitted)); *see also Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 474 (4th Cir. 1983) ("Although the [plaintiff's] amended complaint phrases its request for money as a request for equitable relief, Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms."). Thus, even if Plaintiffs had avoided pleading an explicit request for money damages (which they did not, as their Complaints seek to compel Defendants to "immediately pay"), their avoidance of those words would not overcome the direct connection that their Motions and Complaints draw between the relief sought here and the disbursement of federal funds. This connection compels the Court to find that, under the Tucker Act, jurisdiction is lacking here.

Moreover, Plaintiffs' reliance on 20 U.S.C. § 1683 is unavailing.[6] That provision states that, "[i]n the case of action, ***not otherwise subject to judicial review***, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 1682 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of title 5 . . . ." 20 U.S.C. § 1683 (emphasis added). But here the action is subject to judicial review in the Court of Federal Claims. *California*, 145 S. Ct. at 968 ("[T]he Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" (quoting 28 U.S.C. § 1491(a)(1))). Accordingly, that provision does not apply here.

---

[6] Plaintiffs made a singular reference to 20 U.S.C. § 1683 in their Memoranda in Support of their Motions. *FCSB*, Dkt. 3 at 16; *ASB*, Dkt. 3 at 16. It was not until their Reply Briefs that Plaintiffs devoted any analysis to Section 1683. *FCSB*, Dkt. 27 at 6; *ASB*, Dkt. 26 at 6. Thus, Defendants did not have an opportunity to respond.

Plaintiffs also attempt to place their claims within the realm of those that Justice Barrett found distinguishable in *NIH*, arguing that the Court of Federal Claims is unable to afford them relief given that they "seek[] prospective equitable relief demanding . . . that Defendants comply with Title IX's procedural requirements." *FCSB*, Dkt. 27 at 9; *ASB*, Dkt. 26 at 9.  But, respectfully, that is not relief that Plaintiffs seek in their Motions or Complaints, and Plaintiffs do not identify any count or relief sought that relates to Title IX's procedural requirements.

Moreover, in Justice Barrett's concurrence, she explained that "vacating the guidance" at issue there "does not reinstate the terminated grants" and that such claims, although perhaps topically related, were "legally distinct." *NIH*, 2025 WL 2415669, at *2 (Barrett, J., concurring); *see also id.* at *3 (noting that she was "not sure" that the challenges to the guidance and the grant terminations arise from substantially the same operative facts).  Although Plaintiffs here have exercised a degree of ingenuity, it is Plaintiffs who have blurred the line in this case and expressly linked their claims to the disbursement of money.  Indeed, the Motions specifically condition the need for "immediate action" justifying injunctive relief on "the federal funds that Defendants have effectively frozen." *FCSB*, Dkt. 3 at 16; *APS*, Dkt. 3 at 16; *see also FCSB*, Dkt. 1 at 28 ¶ (j); *ASB*, Dkt. 1 at 27 ¶ (j).  Plaintiffs' proposed orders in support of injunctive relief refer to no specific count, no specific claim, and seek, as a singular relief, to enjoin Defendants "from designating [FCPS/APS] as 'high-risk' and requiring that [FCPS/APS] receive federal funds by reimbursement." *FCSB*, Dkt. 2-1 at 2; *ASB*, Dkt. 2-1 at 2.  Indeed, throughout their briefing, almost every time Plaintiffs mention the "high-risk" designation, it is in conjunction with the effect that this determination has had or will have on the disbursement of federal funds.  Moreover, despite the discussion at the September 3, 2025 hearing and the Court's questions regarding how the Tucker Act applies to specific counts, Plaintiffs continue to refer broadly to the Complaints in their entirety.   Thus, the Court is left without a principled basis on which it could carve out any particular count from the overarching reinstatement-of-grants framework and craft a non-

9

causally or legally related relief. Again, this compels the conclusion that this Court lacks subject matter jurisdiction.

Finally, with respect to the recently issued case *President & Fellows of Harvard College v. United States Department of Justice*, No. 25-cv-11048, Dkt. 238 (D. Mass. Sept. 3, 2025) ("*Harvard*") (addressing allegations relating to antisemitism and the First Amendment),[7] this Court agrees with the very contemplative statement of U.S. District Judge Allison D. Burroughs opining that the boundary between the APA and the Tucker Act remains, at least somewhat, "elusive" given the procedural posture of the cases in which these lines are being drawn. *See id.* at 24. But, to be sure, based on the record before the Court, the relief sought, and more importantly the Fourth Circuit law binding this Court (which are not precedents binding the District of Massachusetts), this Court finds that the case here falls on the other side of the line. *See Sustainability*, 2025 WL 1587100, at *2 (holding it was "unlikely that [the plaintiffs'] ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended [the plaintiffs'] grants, would provide a detour around the Tucker Act"). And, in the *Harvard* case, Judge Burroughs specifically held that, "[r]egardless of how these claims are resolved, the government will not necessarily be obligated to disburse any additional funds . . . ." *Id.* at 31. Again, Plaintiffs here provide this Court with no sustainable basis on which to make a similar finding, especially when the very first paragraph of the Complaints alleges that Defendants' placement of FCPS and APS on high-risk status had "the result that" federal funding would be done by reimbursement only, where the emergency nature of the relief sought is premised on "freezing federal funds," and where Plaintiffs specifically seek immediate payment of federal funds in their Complaints. *FCSB*, Dkt. 1 ¶ 1 ("On August 19, 2025, the Department of Education . . . issued a press release announcing that it was 'placing . . . [FCPS] . . . in Northern Virginia on high-risk status' with

---

[7] The *Harvard* decision was issued on September 3, 2025, the same day that this Court held argument in these cases. Thus, the parties did not have an opportunity to raise this decision at oral argument, and it has only been discussed in Plaintiffs' Reply Briefs.

the result that 'all Department funds including formula funding, discretionary grants, and impact aid grants' will be 'done by reimbursement only.'"); *ASB*, Dkt. 1 ¶ 1 (same for APS); *FCSB*, Dkt. 1 at 28 ¶ (j) (asking this Court to "[r]equire that Defendants immediately pay to FCBS . . . funds"); *ASB*, Dkt. 1 at 27 ¶ (j) (same for ASB); *FCSB*, Dkt. 3 at 16 ("Because the federal funds that Defendants have effectively frozen are essential . . . , immediate action is needed."); *ASB*, Dkt. 3 at 16 (same). Accordingly, this Court lacks jurisdiction, and Plaintiffs' Motions will be denied.

> B.  **Whether the Complaints Will Be Dismissed for Lack of Subject Matter Jurisdiction**

The lack of subject matter jurisdiction to provide the relief requested in the Motions also compels the Court to examine the Complaints. As noted *supra*, at oral argument, the Court asked questions of all parties to determine whether any of the specific counts alleged here should be treated differently from one another—no party argued they should. Accordingly, the Court, like the parties, will address the Complaint as a whole.[8]

For much the same reason that the Court lacks subject matter jurisdiction over the Motions, the Court also lacks subject matter jurisdiction over the Complaints. The Court notes that almost every count in the Complaint contains specific references to grants, funds, or reimbursements. *See, e.g.*, *FCSB*, Dkt. 1 ¶¶ 66 ("constructive termination or refusal to continue federal funds owed to FCPS"), 69 ("Defendants' actions constructively terminating or refusing to continue funds owed to FCPS"), 88 ("Defendants have nonetheless conditioned FCPS's receipt of federal funds . . . ."), 89 ("conditioning the Department funding"), 97 ("FCPS receives federal education funds under several federal statutes . . . . These funds are critical to FCPS's ability to provide state and federally mandated education-related services . . . ."), 99 ("Defendants are conditioning essential federal funding . . . ."), 101 ("[t]his

---

[8] Judge Burroughs found in the *Harvard* case that "splitting [those] claims between two forums [was] procedurally unworkable." No. 25-cv-11048, Dkt. 238, at 29. Here, too, Plaintiffs' claims are inextricably intertwined and must "rise [and] fall together" unlike the guidance and terminations in *NIH*. *Id.* Thus, Plaintiffs' claims, which ultimately and fundamentally seek immediate disbursement of funds, fall within the Tucker Act and the instruction and precedents of the Supreme Court and Fourth Circuit.

11

funding threat"), 107 ("Defendants have no authority . . . to demand FCPS rescind Regulation 2603.2 . . . in order for FCPS to receive federal funding."), 108 ("FCSB is entitled to a declaration that Defendants acted *ultra vires* by demanding that FCSB rescind its policy in order for FCPS to receive federal funding."), 112 ("FCSB and Defendant have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" where the issue requiring immediacy is the disbursement of funds); *ASB*, Dkt. 1 ¶¶ 66, 69, 88, 89, 97, 99, 101, 107, 108, 112 (same allegations by ASB). As noted above, the Complaints also specifically seek to have Defendants "immediately pay" Plaintiffs funds. *FCSB*, Dkt. 1 at 28 ¶ (j); *ASB*, Dkt. 1 at 27 ¶ (j). Thus, under binding Supreme Court and Fourth Circuit precedent, because Plaintiffs base their Complaints around requests "to order the payment of money," this Court lacks subject matter jurisdiction over the actions. *See California*, 145 S. Ct. at 968 (holding a district court likely lacked jurisdiction to enjoin the Department from terminating grants); *Sustainability*, 2025 WL 1587100, at *1 (holding a district court likely lacked jurisdiction to require the Government to restore access to grant funds immediately and prohibit the Government from freezing, terminating, or otherwise interfering with the funding of the grants without court authorization); *NIH*, 2025 WL 2415669, *1 (holding a district court likely lacked jurisdiction to vacate the Government's termination of grants). Accordingly, the Complaints will be dismissed.

\*     \*     \*

Accordingly, for the foregoing reasons, it is hereby ORDERED that Plaintiffs' Emergency Motions for Preliminary Injunction and/or Temporary Restraining Order (*FCSB*, Dkt. 2; *ASB*, Dkt. 2) are **DENIED**; and it is

FURTHER ORDERED that the Complaints (*FCSB*, Dkt. 1; *ASB*, Dkt. 1) are **DISMISSED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that the Motion for Leave to File Brief of *Amicus Curiae* (*FCSB*, Dkt. 17) is **DENIED**.[9]

The Clerk of the Court is directed to provide copies of this Order to all counsel of record and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
September 5, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[9] A federal district court has "broad discretion in deciding whether to allow a non-party to participate as *amicus curiae*." *F.E.R.C. v. Powhatan Energy Fund, LLC*, 2017 WL 11682615, at *1 (E.D. Va. Mar. 15, 2017). Further, a court should only grant leave to file an *amicus curiae* brief if the court "deems the proffered information timely and useful." *Id.* Counsel for both the Plaintiffs and the Government have zealously, professionally, and most competently assisted the Court in reaching its decision. Here, while the Court appreciates the time and energy exercised by the *amicus* in support of its perspective, the proffered *amicus* brief does not aid the Court in analyzing the issues presented to it. Accordingly, the Court exercises its discretion to deny the motion.